Supreme Council of the Order of Chosen Friends agt. Fairman.

---

## SUPREME COURT.

THE SUPREME COUNCIL OF THE ORDER OF CHOSEN FRIENDS agt. CHARLES G. FAIRMAN, superintendent of the insurance department.

*Associations — Voluntary or incorporated — When amenable to chapter 256 of Laws of 1881, and not to the general insurance statutes of the state — Injunction — When and to what extent may be invoked against a state officer.*

The plaintiff is a corporation duly organized and formed under the laws of the state of Indiana, and its legal location is in the city of Indianapolis in said state. It commenced business in this state October 2, 1880, eight months previous to the adoption of chapter 256 of the Laws of 1881. Among the objects of the plaintiff's organization is the establishment of a "relief fund from which members of this association who have complied with all its rules and regulations may receive a benefit on a sum not exceeding three thousand dollars, which shall be paid either when a member reaches the age of seventy-five years, or when, by reason of disease or accident, such member becomes permanently disabled, or upon his death." The resources of the plaintiff are derived entirely from voluntary donations and admission fees, dues and assessments from members and the interest thereon. The plaintiff claims the right to do business in this state, and seeks to enjoin the defendant, the superintendent of insurance, from interfering in any way with its operations, insisting that he has wantonly and maliciously sought to interrupt its operations and business :

*Held,* that the plaintiff is amenable to the Laws of 1881 and not to the general insurance statutes of the state, and that the article of its by-laws

which provides for the payment of a benefit to a member upon his attaining the age of seventy-five years, is one rendered proper by the occurrence of a physical disability of a member within the true intent and meaning of these words as used in the act aforesaid.

*Held,* also, that as the plaintiff has complied with all the requirements of the act of 1881, it is entitled to carry on its operations in this state unmolested by any improper interference from the defendant or any other person.

*Held,* further, that it is not the office of an injunction nor the prerogative of the court to dictate to an officer of the state his views as to the proper construction of a law. He can only be compelled to do what the law commands him to do, or be restrained from doing an act to another's injury which he has no power to do, but he cannot, by injunction, be prevented from expressing in a lawful and proper manner his views of the legality of a business when he is actuated by no malice or evil intent.

*Special Term, December,* 1881.

*Winfield, Leeds & Morse,* for plaintiffs:

I. The court has a right to interfere by injuction to restrain a public officer, when the plaintiff can show a clear, legal and equitable right to relief, where the defendant has done or committed, or has threatened to do some act which will be destructive of plaintiff's rights, or which has caused or is about to cause material injury to the plaintiff. In every such case courts of equity will interfere by injunction in furtherance of justice and the violated rights of the party (*Story on Equity,* sec. 955, *a; People* agt. *Canal Board,* 55 *N. Y.,* 390; *Lutes* agt. *Briggs,* 5 *Hun,* 67; *Tribune Assoc.* agt. *Sun Print. and Pub. Co.,* 7 *Hun,* 175; *Deidricks* agt. *North Western R. R. Co.,* 33 *Wis.,* 33; *Beatty* agt. *Kurtz,* 2 *Peters,* 566; *Ogden* agt. *Gibbons,* 4 *John's Ch.,* 150; *Livingston* agt. *Ogden,* 4 *John's Ch.,* 48; *Cromwell* agt. *Stevens,* 2 *Daly,* 15). The courts will interfere not only upon the information of the attorney-general, but also upon the application of private parties, where it is sought to prevent irreparable mischief or to suppress multiplicity of suits and oppressive litigation (*Story on Equity,* secs. 924, 928; *Knox* agt. *The Mayor,* 55 *Barb.,* 404).

II. The plaintiff having shown that the conduct and acts of the defendant have actually resulted in damage to the plaintiff; that the nature and character of the injury arising from the defendant's acts and conduct are such as to preclude an accurate or correct estimate of the extent or measure of the damage, the case for the plaintiff is clearly established, and its right to an injunction is fully made out. If there is any law or authority to justify the acts of the defendant, the burden is on him to show it (*Underwood* agt. *Green*, 42 *N. Y.*, 140; *Tribune Assoc.* agt. *The Sun*, 7 *Hun*, 175).

III. The defendant, since he can define no legal authority for his action, must stand before the court simply as an individual, and his conduct in defaming the legal character of the plaintiff's action which impairs its powers and operations are analogous to a slander of title (*Snow* agt. *Judson*, 38 *Barb.*, 210; *Benton* agt. *Pratt*, 2 *Wend.*, 385; *White* agt. *Merritt*, 7 *N. Y.*, 352; *Gallagher* agt. *Brunnell*, 6 *Cow.*, 346).

*Andrew S. Draper*, for defendant.

WESTBROOK, *J.* — The plaintiff is a corporation duly organized and formed under the laws of the state of Indiana, and its legal location is in the city of Indianapolis in said state.

It commenced the transaction of business in this state on the 2d day of October, 1880, and had been transacting business therein for a period of eight months when chapter 256 of the Laws of 1881 was adopted.

The objects of the plaintiff's organization, as stated in the complaint, are " to unite in bonds of fraternity, aid and protection, all acceptable white persons of good character, steady habits, sound bodily health and reputable calling, who believe in a supreme intelligent being, the creator and preserver of the universe; to improve the condition of its membership, morally, socially and materially by timely counsel and instructive lessons, by encouragement in business and by assistance to obtain employment when in need; to establish a relief fund

from which members of this association, who have complied with all its rules and regulations, or persons by such members lawfully designated, or the legal heirs of such members, may receive a benefit on a sum not exceeding three thousand dollars, which shall be paid either when a member reaches the age of seventy-five years, or when, by reason of disease or accident, such member becomes permanently disabled from following his usual or some other occupation, or upon the satisfactory evidence of the death of such member, and when all the conditions regulating such payment have been complied with."

The resources of the plaintiff are derived entirely from voluntary donations, admission fees, dues and assessments from members and the interest thereon.

As to the objects of the plaintiff's organization and the source of its revenues, and the time when it commenced business in this state there is no dispute, and claiming the right to do business therein, the plaintiff seeks to enjoin the defendant from interfering in any way with its operations, insisting that he has wantonly and maliciously sought to interrupt such operations and business. The defendant claims, as one defense to the motion, that the plaintiff's agreement to pay to a member, his heirs or beneficiary, the sum of $3,000 upon such member attaining the age of seventy-five years, subjects it to the general insurance law of the state, and therefore it cannot transact business therein without complying with such general insurance statutes. The first question, therefore, which this motion presents is, does chapter 256 of the Laws of 1881 make the general insurance laws inapplicable to the plaintiff?

The act to which reference has just been made by its first section provided that " all associations and societies, whether voluntary or incorporated under the laws of this state, or any other state or territory of the United States, or of the District of Columbia, doing business in this state, which hereafter have or hereafter may issue any certificate to, or have made or may make any promise or agreement with their members

whereby, upon the decease or sickness *or other physical disability* of a member, any money or other benefit, charity, relief or aid is to be paid, provided or rendered to such member or to others dependent upon him, or beneficiary designated by him, which money, benefit, charity, relief or aid are derived from voluntary donations or from admission fees, dues and assessments collected or to be collected from the members thereof, and interest and accretions thereon, and which funds and the business operations of which associations and incorporations are limited to such benevolent or charitable uses *shall be subject only to the provisions of this act* as hereinafter specified."

It will be observed from the language of the law just given, and from the nature and character of its business and the source of its revenue, in regard to which there is no contest, that the plaintiff is clearly subject to the act of 1881, and not to the general insurance law of the state, provided that the attainment of seventy-five years of age by a member is a "physical disability" within the true intent and meaning of that statute.

That old age causes "physical disability" is a fact which our senses continually attest. These mortal bodies are certain to fail by the lapse of years alone, though sickness, disease or accident do not visit them.

There is a period too which human experience has fixed as the time when the vital forces are lessened and when "physical disability," to a certain extent, at least, must surely be present.

The Psalmist says "the days of our years are three score years and ten," and while he admits what our observation has also discovered that the number of those days may in exceptional cases be increased, yet both the constitutional and statute law of the state recognize the fact that at seventy years of age physical infirmity and disability are present (*art.* 6, *sec.* 13 *of state Const.*; 1 *R. S.* [6th *ed.*], 388, *sec.* 6), and in so doing they have but expressed our own consciousness.

The extent of the "physical disability," upon the existence of which a corporation or association of the character of the plaintiff may undertake to pay benefits without placing itself beyond the pale of the act of 1881, is not stated therein. A "physical disability" may be great or small to the degree of complete prostration, or of partial only; but so long as it exists as a fact, and is really present disabling a person either entirely or partially from pursuing the active duties and business of life, then an agreement by the plaintiff, or any similar association or corporation to pay to a member, or to his family or to a beneficiary designated by him, a benefit, when he has thus become completely or partially disabled, is lawful under the act of 1881, without any compliance with the general insurance law. Has the plaintiff undertaken to do any more than this? It simply agrees to pay a specified sum when a member attains seventy-five years of age, or when by disease or accident he is prevented from following any occupation, or upon his death. In other words the plaintiff, recognizing the fact that "physical disability" must come to a member by age alone, though he be exempted from disease and accident, and that uncertainty might exist as to its actual presence unless a specific time was fixed when it should be deemed to be present, has declared that the arrival of the age of seventy-five years — a period of life five years beyond the allotted days of man, and the period of his usefulness to the state in a judicial capacity — shall be deemed a "physical disability," which shall entitle a member to a benefit, from a relief fund, which he has helped to create. As in fact and in truth, in every case where a person reaches the age of seventy-five years, "physical disability," greater or less, must be present, the undertaking of the plaintiff is not different from one depending upon the coming of physical infirmities by reason of age. The contracts, it makes, simply remove all uncertainty by the specification of a time, upon the arrival of which "physical disability" shall be deemed to be present, and which time is one that not only divine and human laws, but

our experience as well, recognize as a period of life when it is certain to be present, though in some instances its presence is less clearly manifested than in others.

For the reasons which have been stated I am forced to the conclusion that the plaintiff is amenable to the law of 1881, and not to the general insurance statutes of the State; and that the article of its by-laws which provides for the payment of a benefit to a member upon his attaining the age of seventy-five years, is one rendered proper by the occurrence of an "other physical disability" of a member, within the true intent and meaning of those words, as used in the act aforesaid.

Before proceeding to the discussion of the second question which this motion involves, it should be stated that section 4 of chapter 256 of the Laws of 1881, is not applicable to the plaintiff. That section excepts from its operations, associations and societies, which "are now doing business within this state," and as the plaintiff had been doing business within this state for eight months when the law was enacted, it required no certificate of authority so to do from the superintendent of insurance as is by such section required from companies which, subsequently to the passage of the law, undertake to do business within this commonwealth. As the plaintiff has complied with all the requirements of the act of 1881 (this is assumed because not questioned), it is clearly entitled to carry on its operations in this state, unmolested by any improper interference from the defendant or any other person, and this brings us to the inquiry : Has the defendant improperly and unlawfully sought to injure the plaintiff in its business ?

The complaint proceeds upon the theory that the defendant as superintendent of insurance has improperly written to parties to dissuade them from uniting with any of the plaintiff's branches in this state, threatening them with legal penalties in case of their becoming members, and has thus seriously injured the plaintiff in its business. If this had been wantonly and maliciously done, as the complaint charges,

the plaintiff would be entitled to the injunction it seeks to restrain such conduct. The defendant is, however, a high officer of the state to whom such conduct should not be attributed, except upon the clearest proof. He emphatically denies any such interference as has been imputed to him by the plaintiff, and shows by much detail of statement, the times and occasions when he has expressed an opinion of the plaintiff and its business.

All these utterances, whether spoken or written, were made when he was officially interrogated and were evidently promulgated in good faith. It is not the office of an injunction nor the prerogative of this court to dictate to an officer of the state his views as to the proper construction of a law. He can only be compelled to do what the law commands him to do, or be restrained from doing an act to another's injury which he has no power to do, but he cannot by injunction be prevented from expressing in a lawful and proper manner his views of the legality of a business when he is actuated by no malice or evil intent. Upon the allegations of the defendant's answering papers the preliminary injunction asked for must be refused. A trial of the action, which will more perfectly develop the case, will enable the court to proceed with more certainty. As, however, our construction of the act of 1881 differs wholly from that of the defendant, no costs upon the denial of this motion will be given, but they will abide the final determination of the suit.